UNITED STATES DISTRICT COURT FILED
MAY 29 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERNEST MATTA III,

Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,

Defendant.

18-CV-1251-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 23).

Plaintiff Ernest Matta III brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Matta's motion (Dkt. No. 15) is granted, the Commissioner's motion (Dkt. No. 21) is denied, and the case is remanded.

## BACKGROUND[1]

Mata protectively filed an application for DIB and SSI on February 26, 2015, alleging a disability as of June 30, 2010, due to high blood pressure, lower back problems, leg pain, peripheral neuropathy, diabetes, migraine headaches, anxiety, depression,

[1] The Court assumes the parties' familiarity with the record in this case.

memory loss, hepatitis C, sleep problems, and panic attacks. (Tr. 73, 205-213, 226).[2] His SSI claim was initially denied June 23, 2015.[3] (Tr. 111-121). On July 1, 2016, Mata filed a timely written request for hearing. (Tr. 123-125).

On June 21, 2017, a video hearing was conducted by Administrative Law Judge ("ALJ") Rosanne M. Dummer. The ALJ appeared in Falls Church, Virginia, while Mata appeared in Buffalo, New York, along with his attorney. (Tr. 42-72). A vocational expert also appeared via telephone.

After the hearing, on June 22, 2017, the ALJ solicited a medical opinion from medical expert Dr. Steven Goldstein, M.D., regarding Mata's physical impairments. (Tr. 1469-1475). She also sent him a list of Interrogatories to answer. (Tr. 1477-1480). On June 27, 2017, Dr. Goldstein answered many of ALJ's Interrogatories, but did not complete the medical source statement. (Tr. 1486-1496). After proffering Dr. Goldstein's answers to Mata's attorney, the ALJ posed additional questions to Dr. Goldstein per the attorney's request. (Tr. 1497-1513). Dr. Goldstein provided additional answers to these Interrogatories.

On August 23, 2017, the ALJ issued a decision finding Matta not disabled. (Tr. 11-40). That decision became final when on September 5, 2018, the Appeals Council denied his request for review. (Tr. 1-6). This action followed.

[2] References to "Tr." are to the administrative record in this case.

[3] It is not clear whether the DIB claim was ever adjudicated. However, it is possible that the Social Security Administration issued a denial based upon *res judicata* as Mata had a prior claim for such benefits denied on November 27, 2013. (Tr. 222).

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and

whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment

of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Matta had not engaged in substantial gainful activity since February 26, 2015, his application date. (Tr. 16). At step two, the ALJ concluded that Matta has the following severe impairments: history of polysubstance abuse, on methadone maintenance; migraines, on Botox management; reported degenerative disc

disease status post spinal cord stimulator ("SCS"); anxiety disorder; depressive disorder; and history of neuralgia, neuritis status post SCS. (Tr. 17). At step three, the ALJ found that Matta does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.* Before proceeding to step four, the ALJ assessed Matta's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work . . . The claimant could carry twenty pounds occasionally and ten pounds frequently. He could sit six of eight hours; he could stand/walk six of eight hours. The claimant should avoid concentrated exposure to loud noise (i.e., construction street noise, kitchen dish room). He should avoid concentrated exposure to vibration. The claimant may change positions at the workstation to sit/stand, on the hour. Secondary to mental impairment, the claimant could understand, remember, and carry out instructions for routine, repetitive type unskilled work; he should not perform work involving complex instructions, arbitration, or negotiation. The claimant could sustain attention and concentration for two-hour segments of time in an eight-hour day. He could adapt to changes in the work setting for routine, repetitive type unskilled work.

(Tr. 19). Proceeding to step four, the ALJ found that Matta has no past relevant work. (Tr. 33). At step five, the ALJ found that, considering Matta's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including Ticket Taker, Office Clerk, and Mail Clerk. (Tr. 33-34). Accordingly, the ALJ concluded that Matta is not disabled under the Act. (Tr. 35).

IV. *Mata's Challenges*

Mata argues that this case must be remanded because: (1) the ALJ improperly applied the "treating physician rule" to the opinion of his treating psychiatrist, Dr. John Napoli, M.D.; and (2) the ALJ erred by substituting his own medical judgement over that of any physician.

The "treating physician rule" "requires the ALJ to give 'controlling weight' to the opinion of a claimant's treating physician regarding 'the nature and severity of [the claimant's] impairment(s) . . . [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Piatt v. Colvin*, 80 F.Supp.3d 480, 491 (W.D.N.Y. 2015) (quoting 20 C.F.R. § 404.1527(c)(2)). "Even where a treating physician's opinion is not entitled to 'controlling weight,' it is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017).

If an ALJ decides that the opinion of a treating physician is not entitled to controlling weight, he or she must determine how much weight, if any, to give it. In doing so, the ALJ must "explicitly consider" the following factors (the so-called *Burgess* factors): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (*per curiam*) (internal quotations and citations omitted). The ALJ must give "good reasons" for the weight given to the treating physician's opinion. Id. at 96 (internal quotations and citations omitted). An ALJ's failure to "explicitly" apply the *Burgess* factors is a procedural error, and such error is not harmless, unless "a searching review of the record" shows that the substance of the treating physician rule was not traversed[.]" Id. (internal quotations and citations omitted); see also *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Merkel v. Comm'r of Soc. Sec.*, 2018 WL 6438944 *1, *5 (W.D.N.Y. Nov. 28, 2018) (the ALJ was "required to explain why he has not adopted

certain medical opinions, particularly those given by a plaintiff's treating physician for important functions such as walking and standing..." where plaintiff had gone through several knee surgeries); *Chalk v. Berryhill*, No. 16-cv-6494, 2017 WL 4386811, * 11 (W.D.N.Y. Sept. 29, 2017) ("Because the ALJ failed to set forth comprehensive reasons for rejecting plaintiff's treating physicians' opinions here, the denial of benefits was not supported by substantial evidence."); *Cordero v. Colvin*, No. 1:15-cv-00845(MAT), 2016 WL 6829646, *5 (W.D.N.Y. Nov. 21, 2016)( remanded where "none of the regulatory factors support a decision not to afford controlling weight to [treating physician]."). *Goldthrite v. Astrue*, 535 F.Supp.2d 329, 336 (W.D.N.Y. 2008) (remanded where the ALJ rejected the treating physician's opinion and gave "greater weight to a consultative exam... that gave no specific description of the Plaintiff's functional limitations other than 'mild restriction.'").

When determining a claimant's mental RFC, it is improper for an ALJ to give little weight to a treating psychiatrist's or psychologist's opinion solely because it is based on a patient's self-reports, because all psychological assessments are based on a patient's subjective statements and their behavior during the exam. *Richardson v. Astrue*, 2009 WL 4793994, at *30 (S.D.N.Y. Dec. 14, 2009) (the "ALJ's observation that [treating psychiatrist] Dr. Weinberger's clinical findings were 'based solely on.... self-reported presentation of his symptoms' also does not amount to a 'good reason' for diminishing the weight afforded to her reports."); see also *Sanchez v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 115153 at *54 (S.D.N.Y. Aug. 15, 2014) (it is not a good reason to discount a treating psychiatrist's opinion because it is "based on subjective complaints").

Here, the ALJ erred when weighing the medical opinion of Mata's treating psychiatrist, Dr. Napoli. In rejecting Dr. Napoli's opinion, the ALJ did not expressly consider the *Burgess* factors, thereby committing procedural error. In addition, the reasons offered by the ALJ for rejecting Dr. Napoli's opinion were not good reasons.

The ALJ's analysis is as follows:

> These statements and opinions are given little weight and appear to based upon the claimant's self-reports. As noted in Dr. Napoli's own treatment notes, the claimant had mainly normal mental status findings. He maintained independent functioning. He participated in only conservative care including individual counseling and group counseling. Were the claimant limited per the extreme findings of Dr. Napoli, it would be reasonable that more than conservative care would have been recommended. It appears the assessments were overly sympathetic to the claimant's financial concerns, and prepared solely in anticipation of litigation.

(Tr. 30) (citation omitted).

The first reason offered by the ALJ for discounting Dr. Napoli's opinion is because it was based upon Mata's subjective complaints. Under *Richardson* and *Sanchez*, this was not a "good reason" for not giving Dr. Napoli's opinion controlling weight. See also *Stacey v. Comm'r of Soc. Sec.*, 20 U.S. App. LEXIS 238, 799 Fed. Appx. 7 (2d Cir. 2020) ("the ALJ's apparent expectation that a psychological opinion be formed only after diagnostic testing is unrealistic. A medical diagnosis will often be informed by the patient's subjective description of his or her symptoms.") (citation omitted).

The second reason the ALJ gave for discounting Dr. Napoli's opinion is because Mata's treatment, according to the ALJ, was conservative in nature. (Tr. 30). Mental health symptoms are generally treated either by pharmacological treatment or by counseling, or both. Here, Mata did both. Throughout the entire period in question, Mata

treated pharmacologically with Dr. Napoli. (Tr. 439-440, 763-906) and received counseling from his mental health counselor, Henry Kohler (Tr. 1305-1468). He treated with Dr. Napoli monthly and with Kohler every other week. (Tr. 52-53). Mata also attended addiction treatment on a consistent basis throughout as well. (Tr. 907-1284). He attended group therapy three times per week. (Tr. 53-54). It is not clear to the Court, and the ALJ does not state, how Mata could have or should have been treated any more aggressively. It is not for the ALJ to opine as to whether Mata's treatment was conservative or aggressive without evidence in the record to support her characterization. *Soto-Rivera v. Comm'r of Soc. Sec.*, No. 17-cv-6675-JWF, 2019 WL 2718236, *5 (W.D.N.Y. June 28, 2019) ("An ALJ is not a medical doctor who is competent to decide whether a particular form of treatment is aggressive or minimal, significant or inconsequential. Thus, an ALJ's efforts to minimize a claim of disability because the claimant's treating doctor 'only' recommended a particular type of treatment is improper unless there is evidence in the record to support the ALJ's characterization of the medical significance of the prescribed treatment.").

The last reason given by the ALJ is that Dr. Napoli's treatment notes indicate Mata had mainly normal mental status findings and that he maintained independent functioning. (Tr. 30). However, the records from other providers are consistent with Dr. Napoli's opinion that coping and dealing with stress is a major underlying cause of Mata's symptomology. For example, the records from addiction counselor Alexis O'Donnell dated August 14, 2015, note that Mata consistently has a high level of stress, almost daily. (Tr. 961-962). Further, Mata's group therapy was predicated upon mindfulness and stress reduction. (Tr. 948-1177).

In sum, the Court finds that the ALJ improperly rejected the medical opinion of the treating psychiatrist. The ALJ did not expressly consider the *Burgess* factors and did not provide good reasons for not giving such opinion controlling weight. Further, after a searching review of the record, the Court cannot say that the substance of the treating physician rule was not traversed in this case. The case must therefore be remanded.

The Court also finds that the ALJ erred by improperly substituting her own medical opinion over that of any physician. It is well established that an "ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion" and that "while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [she] is not free to set [her] own expertise against that of a physician who [submitted an opinion or] testified before [her]." *Balsamo v. Chater*, 142 F.3d 75, 81 (2nd Cir. 1998) (internal quotations and citations omitted). A "circumstantial critique by non-physicians [such as an ALJ], however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Shaw v. Chater*, 221 F.3d 126, 135 (2nd Cir. 2000) (internal quotations and citations omitted).

An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and thus an ALJ's determination of RFC without medical opinion authority is not supported by substantial evidence. *Zayas v. Colvin*, 15-cv-6312-FPG, 2016 U.S. Dist. LEXIS 58134, at *11 (W.D.N.Y. May 2, 2016). Only in rare circumstances, particularly where the "medical evidence shows relatively minor physical impairment," can an ALJ permissibly "render a common sense judgment" about functional capacity even without a physician's assessment. *Gross v. Astrue*, 12-cv-6207-MWP, 2014 U.S. Dist. LEXIS 63251 at *51 W.D.N.Y. May 7, 2014) (internal quotations and citations omitted) see also

*Kain v. Colvin*, 14-cv-650-WMS, 2017 U.S. Dist. LEXIS 73595, at *8 (W.D.N.Y. May 14, 2017) (when the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, the "general rule is that the Commissioner 'may not make the connection himself.'") (citations omitted).

In the absence of supporting expert medical opinion, the ALJ should not engage in her own evaluations of the medical findings. *Balsamo*, 142 F.3d at 81. Although an ALJ has "considerable and constant exposure to medical evidence" she is not free to make inferences or diagnoses which are not advanced in the medical record. *Glover v. Astrue*, 08-cv-218-MAT, 2010 U.S. Dist. LEXIS 25533, at *11 (W.D.N.Y. Mar. 18, 2010) (citing *Curry v. Apfel*, 209 F.3d 117, 123 (2nd Cir. 2000)).

In the instant case, the ALJ had no medical authority for her mental RFC finding, as she rejected all medical opinions regarding Mata's mental capabilities, and thus was required to develop the record further. While the ALJ's RFC contained detailed limitations related to Mata's mental impairments, there is no explanation as to how the ALJ formulated this RFC. The ALJ afforded "limited" weight to the opinion from consultative examiner Dr. Janine Ippolito. (Tr. 29). She also purported to give "little" weight to the opinion of treating psychiatrist, Dr. Napoli. (Tr. 29-30). However, it is evident from the RFC that she actually rejected the opinion of Dr. Napoli. Dr. Napoli opined that Mata had no useful ability to sustain attention and concentration for two-hour segments (Tr. 1301), yet the ALJ found that he could do so. (Tr. 29). Likewise, Dr. Napoli opined that Mata was seriously limited in his ability to respond appropriately to changes in a routine work setting (Tr. 1301), yet the ALJ found that he could do so. (Tr. 29).

Having rejected Dr. Napoli's treating opinion, the only other opinion the ALJ had to rely upon was from consultative examiner, Dr. Janine Ippolito. However, the ALJ adopted only parts of Dr. Ippolito's limitations, without any explanation for rejecting the rest. "It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d. Cir. 2002). "However, when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy." *Artinian v. Berryhill*, at *21, 2018 U.S. Dist. LEXIS 5988, 2018 WL 401186 (E.D.N.Y., 2018). An ALJ may not "cherry pick" the evidence; that is, "crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian*, 2018 WL 401186 at *20 (citing *Smith v. Bowen*, 687 F. Supp. 902, 904, (S.D.N.Y. 1988).

Here, the ALJ "cherry picked" only the negative portions of Dr. Ippolito's opinion and improperly dismissed the portion of her opinion that was favorable to Mata, that being the portion dealing with stress with moderate limitations and marked limitations in making appropriate decisions. (Tr. 559). The ALJ gave Dr. Ippolito's opinion "limited" weight because her findings were based on Mata's history of substance abuse and because he last used "substances" two months prior to the consultative exam. (Tr. 29). Yet the ALJ fails to explain this statement. There is no dispute that Mata used marijuana. The record is replete with references about Mata using marijuana. (Tr. 405, 959, 966, 974, 1099, 1105, 1113). However, there is nothing in the record linking Mata's marijuana use to having marked limitations in making appropriate decisions or moderate limitations in dealing with stress.

In sum, because the ALJ improperly substituted her own medical opinion over that of any physician, her decision is not supported by substantial evidence and the case must be remanded.

**CONCLUSION**

For the reasons stated, Mata's motion for judgment on the pleadings (Dkt. No. 15) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: May 27, 2020
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge